**Mary PATTON, Widow of Audley K. Patton, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LANE ENTERPRISES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 2008.

Decided Oct. 22, 2008.

William G. Cohen, New Castle, for petitioner.

Lee Ann Rhodes, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Previously, this Court vacated and remanded the order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ)'s denial of the review and fatal claim petitions of Mary Patton (Claimant). On remand, the WCJ again denied and dismissed the review and fatal claim petitions of Claimant. The Board affirmed. Claimant now petitions for review.

Audley K. Patton (Decedent) worked primarily as a welder for Lane Enterprises, Inc. (Employer) from November 1974, until April 24, 1987. Decedent stopped working on the advice of his physician after he experienced shortness of breath. Employer issued a notice of compensation payable (NCP) which stated, "Claimant [Decedent] has a propensity for acute episodes of metal fume fume [sic] fever which precludes his working in an occupation where he is exposed to zinc fumes.... Claimant [Decedent] also suffers from chronic obstructive pulmonary [sic] disease secondary to smoking." Notice of Compensation Payable, November 28, 1988, at 1.

Decedent died on December 14, 1997. The death certificate indicated that the immediate cause of death was "End Stage COPD [chronic obstructive pulmonary disease]." Death Certificate, December 17, 1997, at 1. The underlying cause of death on the certificate was listed as pulmonary fibrosis. Following Decedent's death, Decedent's widow, Claimant, filed a fatal claim petition and alleged that Decedent's death was the result of "End stage COPD [chronic obstructive pulmonary disease] due to ... pulmonary fibrosis as a result of pneumoconiosis." Fatal Claim Petition, December 13, 2000, at 1. Claimant further alleged that the NCP incorrectly described Decedent's compensable injury as metal fume fever. The same date, Claimant petitioned to review compensation benefits, to review medical treatment and/or billing, and to modify compensation benefits on the ground that there was an incorrect description of Decedent's injury and that medical bills were unpaid. Employer denied all allegations.

Claimant testified that she was married to Decedent from April 3, 1949, until his death. Notes of Testimony, January 25, 2001, (N.T.) at 24–25.[1] Claimant also testified that Decedent smoked one to two packs per day until he cut back after 1987. N.T. at 33.

Claimant presented the deposition testimony of William S. Beckett, M.D. (Dr. Beckett), board-certified in internal medicine, pulmonary medicine, and occupational medicine. Dr Beckett reviewed Decedent's medical records. Dr. Beckett determined that Decedent "had chronic lung disease and died of his chronic lung disease prematurely, and his chronic lung disease was caused both by cigarette smoking and by his occupational exposure

as a welder. And both of these factors were significant contributing factors to his lung disease and to his death." Deposition of William S. Beckett, M.D., November 11, 2002, (Dr. Beckett Deposition) at 21–22. When Dr. Beckett reviewed Decedent's x-rays, he found evidence of welder's pneumoconiosis. He opined that Decedent's workplace exposures were the most likely cause of Claimant's chronic lung disease. Dr. Beckett Deposition at 43. Dr. Beckett further opined that chronic obstructive lung disease and pulmonary fibrosis were the underlying causes of Decedent's death. Dr. Beckett Deposition at 48. Dr. Beckett stated that Decedent's work-related exposures and substantial cigarette smoking were substantial contributing factors to his death because his work exposures contributed to the severity of his lung disease. He also believed that "the work exposures did not only aggravate the disease caused by cigarette smoking but they caused disease themselves, and that ... the combination of these diseases in the same man's pair of lungs contributed to the severity of his disability and both contributed to his premature death." Dr. Beckett Deposition at 52.

Claimant also presented the deposition testimony of Macy I. Levine, M.D. (Dr. Levine). Dr. Levine examined Decedent on December 9, 1987. Dr. Levine reviewed more recent medical records at the request of Claimant. Based on his review of the medical records, Dr. Levine "thought he [Decedent] had pneumoconiosis due to the welding fumes, chronic bronchitis and chronic obstructive lung disease.... He ultimately developed pneumonia and some congestive failure and as a result he died." Deposition of Macy I. Levine, M.D., February 27, 2002, (Dr. Le-

1. There is no reproduced record in this case. All references to the record are to the certified record.

vine Deposition) at 14. Based on Decedent's history, his examination, his review of Decedent's deposition testimony, medical records, material safety data sheets, and the death certificate, Dr. Levine testified to a reasonable degree of medical certainty that the cause of Decedent's death was "the pneumoconiosis due to welding fumes, plus pneumonia, plus congestive failure, which in turn were due basically to the exposure, to a substantial degree, to the welding fumes, contributed to by the cigarette smoking." Dr. Levine Deposition at 20. On cross-examination, Dr. Levine admitted that Decedent's smoking history alone was sufficient to cause chronic bronchitis, chronic obstructive coronary disease, pulmonary symptom complex, and pulmonary impairment. Dr. Levine Deposition at 35.[2]

Employer presented the deposition testimony of Thomas Schauble, M.D. (Dr. Schauble), board-certified in internal medicine, pulmonary medicine, and critical care medicine. Dr. Schauble also qualified as a "B" reader with respect to reading chest x-rays.[3] Dr. Schauble reviewed Decedent's medical records after his death. Dr.

Schauble also reviewed Decedent's death certificate. Dr. Schauble explained:

Chronic obstructive pulmonary disease is really a generic term for a group of illnesses characterized by obstruction of the bronchial tubes to airflow, and many people group chronic bronchial asthma, asthmatic bronchitis, chronic bronchitis and emphysema under the heading chronic obstructive pulmonary disease as a generic term.

I think the vast majority of physicians in public refer to COPD when they're talking about tobacco related illnesses alone.

Dr. Schauble Deposition at 11.

Dr. Schauble explained that metal fume fever[4], the injury for which Decedent received workers' compensation benefits, was self-limited, did not result in chronic pulmonary fibrosis, and did not cause Decedent's death. Dr. Schauble Deposition at 14, 20. Dr. Schauble reviewed Decedent's x-rays from 1994 through 1997, and concluded that Decedent did not suffer from pneumoconiosis because the "x-rays did improve" and they would not with occupationally acquired pneumoconiosis. Dr.

2. Claimant also submitted Dr. Levine's deposition testimony from October 12, 1988, taken in conjunction with the withdrawn claim petition. At that time, Dr. Levine diagnosed Decedent with pneumoconiosis due to welding fumes, chronic bronchitis, and chronic obstructive lung disease. Dr. Levine opined that Decedent's exposure to substances or irritants while at work was a substantial contributing factor to the development of these conditions and that such exposure aggravated damage caused by Decedent's smoking. Deposition of Macy I. Levine, M.D., October 12, 1988, (Dr. Levine Deposition 1988) at 18–20.

Claimant presented the deposition testimony of Decedent taken on April 18, 1988, in conjunction with the withdrawn claim petition. Decedent testified that for the first two weeks of his employment with Employer, he worked as a laborer. After that, he worked as a welder. Deposition of Audley K. Patton, April 18, 1988, (Decedent Deposition) at 2.

Decedent explained his job duties with Employer. He also explained that the fumes of the galvanizing sickened him. Decedent Deposition at 8.

3. Dr. Schauble testified, "A B reader is someone who has taken the qualifying examination offered by the National Institute of Occupational Safety and Health to read chest x-rays as they pertain to occupationally acquired lung diseases." Deposition of Thomas Schauble, M.D., October 8, 2002, (Dr. Schauble Deposition) at 6.

4. Dr. Schauble described metal fume fever as "a condition in which patients with appropriate exposures and welding fumes or one of those develop a flu-like illness comprised primarily of episodic cough, sputum production, generalized weakness, malaise, achiness in the muscles and joints, typical of the flu." Dr. Schauble Deposition at 13.

Schauble Deposition at 19. Dr. Schauble testified within a reasonable degree of medical certainty that Decedent

died of Pseudomonas pneumonia superimposed on underlying severe obstructive lung disease from tobacco smoking.... And I have not—do not have adequate substantiating evidence, either radiographically or through pulmonary function testing, that he did have pulmonary fibrosis. And, therefore, I do not believe that was a contributing factor to his death.

Dr. Schauble Deposition at 20. Dr. Schauble further testified that Decedent's occupational exposures over his years of employment were not a substantial contributing factor to his death. Dr. Schauble Deposition at 20.

Employer also presented the deposition testimony of Murray Sachs, M.D. (Dr. Sachs), board-certified in internal medicine. Dr. Sachs examined Decedent on May 4, 1988, took a history, and reviewed medical records. At that time, Dr. Sachs diagnosed Decedent with asthmatic bronchitis caused by smoking with a history of metal fume fever. Deposition of Murray Sachs, M.D., October 30, 2002, (Dr. Sachs Deposition) at 9–10. Dr. Sachs's review of x-rays found no "evidence of pulmonary fibrosis due to pneumoconiosis. The reason for that is because the films waxed and waned as far as the infiltrates were concerned.... Pneumoconiosis, once present, either progresses or remains the same, it doesn't disappear." Dr. Sachs Deposition at 21–22. Based on his review of Decedent's medical records since his examination, Dr. Sachs opined within a reasonable degree of medical certainty that Decedent's "cause of death was due to congestive heart failure complicated by chronic obstructive lung disease and pneumonia." Dr. Sachs Deposition at 23–24. Dr. Sachs

did not believe that these conditions were in any way attributable to his occupational exposures, but attributed the conditions to his smoking history and obesity. Dr. Sachs Deposition at 19–20, 24. Dr. Sachs explained that chronic obstructive lung disease consists of emphysema and bronchitis. Dr. Sachs Deposition at 34.

The WCJ denied and dismissed Claimant's petitions as time barred. The Board affirmed.

Claimant petitioned for review with this Court and contended that the WCJ erred because Claimant was not afforded the benefit of the statutory presumption of causation in Section 301(e) of the Workers' Compensation Act (Act)[5], that proper weight was not given to the death certificate, and that her petitions were not barred by the time requirements of Section 301(c)(2) of the Act, 77 P.S. § 412(2).

This Court determined that the review petition was timely filed pursuant to *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005).

With respect to the death certificate, Claimant contended that the WCJ erred when he sustained Employer's hearsay objection to the cause of death listed on the death certificate. Claimant submitted the death certificate into evidence at the hearing before the WCJ on January 25, 2001. This Court determined that the WCJ erred and remanded the case to the Board to remand to the WCJ for consideration of the cause of death and, if necessary, make new credibility determinations with respect to the medical witnesses. *Patton v. Workers' Compensation Appeal Board (Lane Enterprises, Inc.)*, No.1950 C.D. 2004, Filed September 15, 2005 (*Patton I* ).

---

5. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 413.

Claimant also contended that the WCJ misplaced the proper burden because she was entitled to a statutory presumption that Decedent suffered from a work-related occupational disease. As part of the remand this Court directed reconsideration in light of the rebuttable presumption. *Patton I.*

Claimant also contended that the Board erred when it affirmed the WCJ's determination that the fatal claim petition was untimely. This Court ruled that it could not determine if the fatal claim petition was timely filed, and noted that if the NCP was amended to include injuries which later were found to be a substantial causative factor in Decedent's death, then the petition was timely filed.[6]

On remand, the WCJ denied and dismissed the petitions and made the following relevant findings of fact:

2. .... The Remand Order from Commonwealth Court directed that consideration be give [sic] to the rebuttable presumption 'that Decedent suffered from an occupational disease.' No such presumption exists in Pennsylvania Workers' Compensation law and thus will not be considered. There is a rebuttable presumption that if an employee suffers from certain diseases and his employment is in an occupation in which such disease occurs with greater frequency than in the general population, then there is a rebuttable presumption that the employment caused the disease.

3. Claimant has failed to sustain his burden of proof that the Notice of Compensation Payable should be modified to recognize additional conditions such as pneumoconiosis, chronic bronchitis or occupationally induced chronic obstructive pulmonary disease. The opinions of Dr. Levine are incompetent as a matter of law inasmuch as that physician refused to admit the law of the case, to wit, that claimant suffered from metal fume fever. Such testimony renders his opinions incompetent. In addition, Dr. Levine has no qualifications as an interpreter of chest x-rays. The interpretations he made are found to lack credibility to the extent that they conflict with the credible opinions of Dr. Schauble, the only certified 'B' reader to testify in this matter. Dr. Schauble credibly opined that although an initial x-ray was suggestive of possible pulmonary fibrosis, subsequent x-rays revealed no pulmonary fibrosis. Dr. Schauble credibly explained, and this opinion has long been held to be the state of the law in Pennsylvania workers' compensation, that occupational diseases such as pulmonary fibrosis are irreversible. Because later x-rays failed to show the presence of any pulmonary fibrosis, Dr. Schauble credibly opined that claimant did not suffer from that condition. The opinions expressed by Dr. Sachs are

---

6. This Court also determined that the WCJ erred when he sustained Employer's objection to a question to Dr. Beckett regarding the cause of Decedent's lifetime disability. This Court agreed with Claimant that the question was the only way to establish that the cause of Decedent's lifetime disability led to his death. Because Claimant alleged in her review petition that the NCP contained an incorrect description of Decedent's work-related injury, the question was not beyond the scope of the petition at issue. This Court ordered the WCJ

to permit and consider Dr. Beckett's answer on remand. *Patton I.*

Claimant also contended that the WCJ capriciously disregarded evidence and did not issue a reasoned decision because he failed to reconcile the evidence, ignored the evidence, and failed to evaluate Claimant's aggravation theory or determine the cause of death, and that the WCJ committed legal error. Because Claimant's contentions essentially dealt with issues that would be addressed on remand, these issues were not addressed.

found to be more credible than those of Dr. Beckett inasmuch as Dr. Sachs expressed opinions in accord with the opinions of Dr. Schauble. Dr. Sachs did not think that claimant suffered from occupational pneumoconiosis. Dr. Beckett thought that claimant died of chronic lung disease which was caused by cigarette smoking and occupational exposure as a welder. The opinions of Dr. Beckett are less credible than those of Dr. Schauble in part due to his lesser credentials. Dr. Beckett did not offer any opinions regarding the findings on claimant's serial chest x-rays. Claimant has thus failed to sustain his burden of proof that he suffered from an occupational disease. Because claimant did not suffer from an occupational disease, there is no presumption to rebut.

4. The cause of death listed in the Death Certificate is found to lack credibility in light of the credible opinions expressed by Dr. Schauble and Dr. Sachs. Dr. Listopad, a family practitioner with no expertise in pulmonology, identified an occupational disease as a contributing factor to claimant's death. However, this unsubstantiated opinion is not reliable in view of the competent and credible medical testimony to the effect that claimant did not suffer from an occupational disease.

WCJ's Decision, February 9, 2007, Findings of Fact Nos. 2–4 at 2–3.

Claimant appealed to the Board which affirmed.

Claimant contends that the WCJ's decision must be reversed because the WCJ did not afford Claimant the benefit of the statutory presumption of causation in Section 301(e) of the Act, or give proper weight to the death certificate, and because the WCJ incorrectly ruled that the fatal claim petition was time barred. Claimant also contends that the WCJ's decision must be vacated because the WCJ erroneously determined that Dr. Levine's testimony was incompetent as a matter of law. Claimant further contends that the WCJ's decision must be reversed because the WCJ capriciously disregarded evidence, did not issue a reasoned decision, ignored evidence, failed to reconcile evidence, failed to decide on Claimant's requested aggravation theory, and failed to determine the cause of death.[7]

## I. Rebuttable Presumption.

■ Initially, Claimant contends that the WCJ on remand failed to afford Claimant the benefit of the statutory presumption that Claimant suffered from an occupational disease.

This Court ordered that the case be remanded to the Board with instructions to remand to the WCJ to consider the rebuttable presumption that Decedent suffered from an occupational disease. On remand, the WCJ determined that there was not a presumption.

Section 108(n) of the Act, 77 P.S. § 27.1, includes the following definition of an occupational disease, "All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population."

Section 301(e) of the Act, 77 P.S. § 413, provides in pertinent part:

---

7. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

If it be shown that the employee, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

Claimant alleged the occupational diseases of pneumoconiosis, chronic bronchitis, and chronic obstructive pulmonary disease at the first hearing. She argues that Dr. Levine and Dr. Beckett both provided evidence that met the requirements of Section 108(n) of the Act, 77 P.S. § 27.1, while Employer's witnesses, Dr. Sachs and Dr. Schauble, provided no evidence to negate the presumption.

In his 1988 deposition, Dr. Levine diagnosed Decedent with pneumoconiosis due to welding fumes, chronic bronchitis, and chronic obstructive lung disease as a result of exposure to substances or irritants as a result of his employment. Dr. Levine further testified that the incidence of these diseases was significantly greater in Decedent's industry or occupation than in the general public. Dr. Levine Deposition 1988 at 18–20. Dr. Beckett testified that the underlying cause of Decedent's death was chronic obstructive lung disease and pulmonary fibrosis. Dr. Beckett further testified that work-related exposures were a substantial contributing factor to his death and that incidents of pneumoconiosis and chronic bronchitis occur substantially more frequently among welders than in the general population. Dr. Beckett Deposition at 47–48, 51, and 54.

With respect to pneumoconiosis, this Court must disagree with Claimant that she established her entitlement to the rebuttable presumption. Both Dr. Schauble and Dr. Sachs presented unequivocal medical testimony that Decedent did not suffer from pneumoconiosis based on an examination of a series of x-rays over time. Dr. Schauble and Dr. Sachs both explained that pneumoconiosis does not lessen over time but either increases or remains the same which was contrary to Decedent's x-rays.

The WCJ found both Dr. Schauble and Dr. Sachs credible. The WCJ, as the ultimate finder of fact in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa. Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995).

In *Helverson v. Workmen's Compensation Appeal Board (Central Foundry Company)*, 76 Pa.Cmwlth. 286, 463 A.2d 1243 (1983), Herbert K. Helverson (Helverson) petitioned for benefits and alleged that he was permanently and totally disabled from silicosis as a result of exposure to airborne silica and other substances during the course of his twenty-five years of employment with Central Foundry Company (Central). Helverson amended his petition at the first hearing to include a claim for benefits because of disability caused by all occupational diseases within Section 108(n) of the Act, 77 P.S. § 27.1. At issue was the nature and cause of Helverson's lung disease. His treating physician, Dr. Murray J. Miller, testified that Helverson was totally disabled by bronchitis superimposed on a chronic obstructive pulmonary disease that had been caused

by his long environmental work history and that the chronic obstructive pulmonary disease was peculiar to his industry or occupation. Theodore Rodman, M.D. (Dr. Rodman) testified on behalf of Central and opined that Helverson was totally disabled as a result of chronic obstructive lung diseases. However, Dr. Rodman testified that the chronic obstructive lung diseases were caused by Helverson's cigarette smoking and were unrelated to his employment. The referee[8] found Dr. Rodman credible and denied Helverson's petition. The Board affirmed. *Helverson*, 463 A.2d at 1244–1246.

One of the issues Helverson raised before this Court was whether the referee erred when he did not apply the rebuttable presumption of Section 301(e) of the Act, 77 P.S. § 413. This Court determined, "The presence of an occupational disease was the controverted issue in this case and the referee concluded preponderance of the evidence was to the negative. Therefore, the presumption was inapplicable." *Helverson*, 463 A.2d at 1246.

Similarly, here the issue as to whether Decedent suffered from an occupational disease was in dispute. Claimant's medical witnesses testified that Decedent suffered from pneumoconiosis while Employer's medical witnesses opined that he did not. The WCJ credited Employer's medical witnesses and rejected the assertion that Decedent suffered from an occupational disease. As in *Helverson*, the rebuttable presumption requested by Claimant was inapplicable. The WCJ did not err

when he considered but rejected the rebuttable presumption.[9]

## II. Death Certificate.

■ Claimant next contends that the WCJ failed to properly consider the cause of death contained in Decedent's death certificate. The death certificate listed the immediate cause of death as "End Stage COPD" and the underlying cause of death as "Pulmonary Fibrosis." Audley K. Patton, Death Certificate, December 14, 1997, at 1. This Court remanded the case to the WCJ for consideration of the cause of death in the death certificate, and, if necessary, make new credibility determinations with respect to the medical witnesses.

On remand, the WCJ determined that the underlying cause of death of pulmonary fibrosis listed in the death certificate was not credible in light of the credible opinions expressed by Dr. Schauble and Dr. Sachs and in light of the fact that Dr. Listopad identified an occupational disease as a contributing factor to [Decedent's] death where the WCJ determined that Decedent did not suffer from an occupational disease.

■ A death certificate in workers' compensation cases is admissible as proof, though not conclusive proof, of both the fact and cause of death. *Hauck v. Workmen's Compensation Appeal Board (Kocher Coal Company)*, 408 A.2d 555 (1979). Here, the WCJ admitted the death certificate on remand. However, the WCJ rejected the cause of death on the certificate due to the credible testimony of Dr. Sachs

---

8. At the time, WCJs were known as referees.

9. A similar analysis applies as to the alleged occupational diseases of chronic obstructive pulmonary disease and chronic bronchitis. Dr. Levine and Dr. Beckett testified that these disorders were the result of Claimant's employment with Employer and that these disorders occurred more frequently for welders

than for those in other occupations. However, Dr. Sachs and Dr. Schauble testified that these conditions were the result of Decedent's smoking history. Dr. Sachs also attributed Decedent's conditions to his obesity. Once again, the WCJ found Dr. Sachs and Dr. Schauble credible.

and Dr. Schauble. Here, the WCJ again exercised his prerogative as the factfinder.

### III. Fatal Claim Petition.

■ Claimant next contends that the WCJ erred when he ruled that the fatal claim petition was barred by the statute of limitations. In the prior opinion, this Court stated, "if the NCP is amended to include injuries which later resulted or were a substantial causative factor in Decedent's death, then the petition was timely filed." *Patton I*, at 19.

On remand, the WCJ denied Claimant's review petition. Because Claimant failed in her attempt to amend the NCP to include injuries which later resulted or were a substantive cause of Decedent's death, the WCJ did not err when he denied the fatal claim petition as untimely.

### IV. Dr. Levine's Testimony.

■ Claimant next contends that the WCJ erroneously determined that Dr. Levine's testimony was incompetent as a matter of law so the WCJ's decision must be vacated.

The WCJ found that Dr. Levine's opinions were incompetent as a matter of law because he refused to admit the law of the case, that Decedent suffered from metal fume fever.

In *Merkel v. Workers' Compensation Appeal Board (Hofmann Industries)*, 918 A.2d 190, 194 (Pa.Cmwlth.2007), this Court quoted *Burke v. Pittsburgh Limestone Corporation*, 375 Pa. 390, 394–395, 100 A.2d 595, 598 (1953) to explain the law of the case doctrine:

> The doctrine of the 'law of the case' is that, when an appellate court had considered and decided a question submit-

ted to it upon appeal, it will not, upon a subsequent appeal **on another phase of the same case,** reverse its previous ruling even though convinced that it was erroneous.... (Emphasis added in *Merkel*).

It is clear that the WCJ did not correctly apply the law of the case doctrine. However, the WCJ set forth additional reasons for his rejection of Dr. Levine's testimony and the acceptance of Dr. Schauble's testimony. The WCJ stated that Dr. Levine had no qualifications as an interpreter of chest x-rays while Dr. Schauble was a certified "B" reader. Further, Dr. Schauble explained that occupational diseases like pneumoconiosis and pulmonary fibrosis are irreversible. The WCJ noted this opinion was the state of the law in Pennsylvania workers' compensation. Because later x-rays did not show the presence of these conditions, the WCJ accepted as credible Dr. Schauble's testimony that Decedent did not suffer from pulmonary fibrosis. As the factfinder, the WCJ was free to make these determinations. Any error with respect to the use of the term, "law of the case," was harmless.

### V. Reasoned Decision.

■ Finally, Claimant contends that the WCJ's decision must be reversed because he capriciously disregarded evidence, did not issue a reasoned decision, failed to reconcile the evidence, ignored evidence, and failed to rule on Claimant's requested aggravation theory or to determine the cause of death.

Claimant asserts that the WCJ failed to issue a reasoned decision because he failed to reconcile the evidence and disregarded evidence.[10]

---

10. Claimant asserts that whether the WCJ capriciously disregarded evidence is a separate issue than whether the WCJ issued a reasoned decision. This Court believes that the issue of whether the WCJ erred by disregarding the

Section 422(a) of the Act, 77 P.S. § 834, provides:

Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

In *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 78, 828 A.2d 1043, 1053 (2003), our Pennsylvania Supreme Court stated that "absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, *some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one*

which facilitates effective appellate review." (Footnote omitted and emphasis added). Our Pennsylvania Supreme Court further explained in *Daniels* that "where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately reasoned." *Id.* at 77, 828 A.2d at 1053.

Here, Claimant argues that the WCJ did not issue a reasoned decision because he failed to recognize the inconsistencies between Dr. Sachs's testimony and Dr. Schauble's even though he found both credible. For instance, Dr. Schauble opined that the cause of Decedent's death was pseudomonas pneumonia superimposed on severe obstructive lung disease from smoking whereas Dr. Sachs opined that Decedent died of congestive heart failure complicated by chronic obstructive lung disease and pneumonia. Additionally, Dr. Schauble diagnosed Decedent with emphysema while Dr. Sachs testified that it would be speculative to make that diagnosis.

Although the two doctors may have differed on the cause of Decedent's death, they both agreed that Claimant did not suffer from an additional work-related disease. The WCJ credited the opinions expressed by each doctor and explained the reasons for the determination. As the fatal claim petition was properly ruled untimely, the differing causes of death had no real impact on the outcome of the case except as to the weight to be accorded each doctor's testimony. Once again, the WCJ is the factfinder, and because of those determinations the decision was reasoned.

evidence is subsumed in her argument con-       cerning a reasoned decision.

Next, Claimant challenges whether the WCJ issued a reasoned decision because he disregarded evidence and gave undue weight to the testimony of Dr. Schauble. In particular, the WCJ failed to note that Dr. Schauble recalled that Dr. Levine testified that Decedent had metal fume fever when Dr. Levine never testified to that in a 1988 deposition, that Dr. Schauble did not remember any testimony concerning arc welding when Decedent testified that he performed arc welding once a week, that Dr. Schauble did not recall the diagnosis of chronic bronchitis in the records of the Ohio State Sleep Lab, that Dr. Schauble did not know if Decedent had been exposed to manganese, chromium, or cobalt even though Dr. Schauble claimed to have reviewed the material safety data sheets, that Dr. Schauble could not recall a history of recurring infections, and that Dr. Schauble admitted that the exposure to those elements could be a significant contributing factor to chronic obstructive pulmonary disease and chronic bronchitis.

Additionally, according to Claimant, Dr. Sachs testified that Decedent should not have returned to work as of May 13, 1987, was exposed to chromium, cobalt, and manganese which is linked to the development of bronchitis, admitted chronic bronchitis was a factor in Decedent's death, but still believed that occupational disease did not play a role in Decedent's death.

Claimant would require a WCJ to make a finding regarding every aspect of the medical testimony presented. As set forth in *Daniels*, the WCJ must state the evidence upon which he relies and his reasons for accepting the evidence. The WCJ discharged his duty in this respect.[11]

Accordingly, this Court affirms.

### ORDER

AND NOW, this 22nd day of October, 2008, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

11. Claimant also argues that the WCJ failed to issue a reasoned decision because he did not discuss Claimant's aggravation theory. Claimant does not fully brief this position. In any event, the WCJ found no work-related injury other than metal fume fever which was accepted in the NCP. Neither of Claimant's medical witnesses argued that Decedent's metal fume fever aggravated a pre-existing condition. The WCJ did not err.

Claimant also argues that the WCJ erred because he did not determine the cause of death. However, Claimant had to prevail on the review petition and establish additional work-related injuries to substantiate the fatal claim, where the cause of death would be relevant. Because Claimant's review petition was denied, the fatal claim petition was untimely. Therefore, it was not necessary for the WCJ to identify the cause of death.