# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania State University/   :
The PMA Insurance Group,   :
           Petitioner   :
  :
        v.   :   No. 1050 C.D. 2015
  :   SUBMITTED: October 30, 2015
Workers' Compensation Appeal   :
Board (Bachman),   :
           Respondent   :


BEFORE:     **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
                  **HONORABLE P. KEVIN BROBSON,** Judge
                  **HONORABLE ROCHELLE S. FRIEDMAN,** Senior Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                 **FILED: January 6, 2016**


       Employer, the Pennsylvania State University and the PMA Insurance Group, petition for review of an order of the Workers' Compensation Appeal Board that affirmed the decision of a Workers' Compensation Judge (WCJ), as modified, to grant the claim and reinstatement petitions of Claimant Joel Bachman and to deny Employer's termination petition. The modification reflects an offset for Claimant's receipt of unemployment compensation benefits in the weekly amount of $431. We affirm.[1]

       For almost ten years, Claimant was employed as an animal caretaker for Employer. His duties included receiving, treating, watering, changing cages

---

[1] In October 2015, Claimant indicated that he would not be filing a brief.

and taking care of a variety of animals. On April 23, 2012, he sustained a work-related injury to his right hand as a result of lifting, removing, replenishing and replacing rat cages on a rack. Specifically, he "felt something like a rubber band snapping in his right hand, causing him pain that lasted throughout the night." WCJ's January 22, 2014 Decision, Finding of Fact (F.F.) No. 3. When Claimant awoke the next morning, he was still experiencing pain and his hand was swollen. Accordingly, he telephoned his supervisor, notified her of the incident and advised her that he would be unable to report to work. Pursuant to her instructions, he filled out an incident report the next day and sought treatment with WorkNet. Although he continued to work full time, his pain persisted. Eventually, one of the WorkNet doctors placed him on work restrictions. In August 2012, following an MRI, Claimant began treating with board-certified orthopedic surgeon Sanjiv H. Naidu, M.D. Dr. Naidu took Claimant off work in September 2012 and performed surgery for right carpal tunnel and cubital tunnel syndromes in November 2012. *Id.*

Employer acknowledged the work injury as a right-hand strain, issuing a medical-only notice of compensation payable (NCP) in June 2012.[2] It subsequently issued a notice of temporary compensation payable (NTCP) on October 5, 2012, acknowledging possible right carpal tunnel and cubital tunnel syndromes and noting a weekly compensation rate of $521.52 based on an average weekly wage of $782.28. Four days later, it issued a notice of compensation denial

---

[2] In 2004, the Bureau added medical-only NCPs. A medical-only NCP provides an employer with the option to accept liability for an injury, but not a loss of earning power. *Armstrong v. Workers' Comp. Appeal Bd. (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 831 (Pa. Cmwlth. 2007). In other words, it places a claimant on notice of the extent of an employer's acceptance of the work injury because it acknowledges that a claimant is entitled to medical expense payments as a result of a work incident but denies any associated disability. *See id.*

(NCD), denying that Claimant had sustained any work injury and noting that it initially had accepted the claim as a right-hand strain in a medical-only NCP.

On October 17, 2012, Claimant filed a claim petition alleging that he had right carpal tunnel and cubital tunnel syndromes as a result of his April 2012 work injury. He simultaneously filed a reinstatement petition, alleging a worsening of his condition as a result of the work injury and noting that Employer had replaced a medical-only NCP with a NTCP and then a NCD. Employer filed a termination petition in April 2013, alleging that Claimant had fully recovered from his work injury, the right-hand strain that it acknowledged in the medical-only NCP, and was able to return to work without restrictions based on the September 2012 independent medical examination (IME) of board-certified orthopedic surgeon David S. Zelouf, M.D.

In support of his position, Claimant testified and also presented the testimony of Dr. Naidu. Claimant testified that he never experienced pain or numbness in his hands or elbows before the injury date, that he continues to experience pain and tenderness and that he does not feel that he can perform all the duties of his pre-injury job. *Id*., No.3. Dr. Naidu testified that Claimant's right carpal tunnel and cubital tunnel syndromes were caused by his work injury and that the surgery he performed for those conditions was also related to that injury. In addition, he testified that Claimant continues to experience persistent numbness and tingling in his arm and cannot return to his pre-injury job without restrictions due to the work injury. *Id*., No. 7.

In pertinent part, Employer presented the medical testimony of Dr. Zelouf and Edwin A. Aquino, M.D. Dr. Zelouf, who had conducted the IME, acknowledged that Claimant possibly had right carpal tunnel and cubital tunnel

syndromes, but opined that his work injury consisted of a sprain or strain of the dorsum of his right hand and that the subsequent nerve issues and surgery were unrelated to that injury. Dr. Aquino, who saw Claimant one time in June 2012 in order to conduct an electrodiagnostic examination, opined that there was no evidence of a nerve injury in the right median and ulnar nerves of Claimant's hand.

Ultimately, the WCJ accepted as credible the testimony of Claimant and Dr. Naidu. Specifically, the WCJ found that Claimant was "a credible, persuasive witness who testified logically and sequentially concerning his employment job [sic] duties, the happening of the work accident, his follow-up care, and his current condition." *Id*., No. 8. Further, the WCJ found that, as Claimant's surgeon, Dr. Naidu had a better understanding of his patient's condition than the other medical witnesses. The WCJ rejected the testimony of Drs. Zelouf and Aquino, noting that they had not seen all of Claimant's records. Accordingly, determining that Claimant had sustained work-related right carpal tunnel and cubital tunnel syndromes, that he continued to remain disabled therefrom, and that, he was, therefore, entitled to total disability benefits from September 19, 2012, and into the future, the WCJ granted Claimant's claim and reinstatement petitions and denied Employer's termination petition. The Board affirmed, with the aforementioned modification, and Employer's petition for review followed.

Although Employer acknowledged in the medical-only NCP that Claimant was entitled to medical expense payments for a right-hand strain as a result of the April 2012 work incident, it denied any associated liability. Because Employer never accepted liability for the loss of earning power associated with that lesser injury, Claimant carried the burden of proving a work injury beyond the acknowledged right-hand strain. *See Inglis House v. Workmen's Comp. Appeal*

4

*Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993) (a claimant who believes that a work injury is causing a loss of earning power must file a claim petition and prove all of the elements necessary to support an award of benefits). In addition, he must establish that the proven work injury caused a loss of earning power. *See Delaware County v. Workers' Comp. Appeal Bd. (Baxter Coles)*, 808 A.2d 965, 968 (Pa. Cmwlth. 2002) (a claimant must establish that the work injury resulted in a disability, that is, a wage loss, which continues for the period for which he seeks benefits). The claimant can meet this burden by proving that his work injury prevents him from performing his time-of-injury job. *Klarich v. Workers' Comp. Appeal Bd. (RAC's Ass'n)*, 819 A.2d 626, 629 (Pa. Cmwlth. 2003). Further, in the context of a reinstatement petition proceeding, the claimant must demonstrate that the injury which gave rise to his original claim continues and that, through no fault of his own, his earning power is again negatively impacted by the injury. *Virgo v. Workers' Comp. Appeal Bd. (County of Lehigh-Cedarbrook)*, 890 A.2d 13, 18 (Pa. Cmwlth. 2013).

Moreover, an employer seeking to terminate a claimant's workers' compensation benefits must prove by competent medical evidence that the disability related to the compensable injury has ceased. *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008). Where a current disability exists, the employer has the burden of proving an independent cause for the disability or a lack of a causal connection between the continuing disability and the work-related injury. *Metro. Ambulance Inc. v. Workers' Comp. Appeal Bd. (Walker)*, 702 A.2d 881, 884 (Pa. Cmwlth. 1997).

On appeal, Employer generally contends that the WCJ acted capriciously and failed to render a reasoned decision when he allegedly

disregarded substantial, competent, uncontroverted and critically relevant evidence and, instead, accepted incompetent, equivocal and contradictory evidence to determine that Claimant's right carpal tunnel and cubital tunnel syndromes were caused by his April 2012 work incident. More specifically, it argues that the WCJ disregarded alleged inconsistencies in the evidence, failed to consider and/or make findings regarding the plethora of medical evidence that it submitted and failed to fully appreciate the education and experience of its medical witnesses. In view of the nature of Employer's arguments, we will briefly outline the evidentiary principles at issue.

A capricious disregard of evidence "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). The reasoned decision requirement provides that a WCJ shall file a "reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." Section 422(a) of the Workers' Compensation Act.[3] A WCJ need not, however, specifically evaluate every line of testimony offered to render a reasoned decision as long as he makes the crucial findings and gives proper reasons for his decision. *Patton v. Workers' Comp. Appeal Bd. (Lane Enters., Inc.)*, 958 A.2d 1126, 1137 (Pa. Cmwlth. 2008). In addition, notwithstanding that requirement, it remains within the purview of the WCJ as the final arbiter of evidence to determine the weight to be accorded evidence. *Roccuzzo v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 721 A.2d 1171, 1175 (Pa. Cmwlth. 1998).

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

Regarding the requisite evidence to support a decision, "[s]ubstantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515 (Pa. Cmwlth. 2002). We must view the evidence in the light most favorable to the party who prevailed below and draw all reasonable inferences deducible therefrom in favor of that party. *Id.* Where both parties have presented evidence, it is irrelevant whether there is evidence of record which supports a fact finding contrary to those made by the WCJ. The relevant inquiry is whether there is substantial evidence to support the WCJ's finding. *Id.* In that regard, the WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Id.* In addition, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including a medical witness. *Williams*, 862 A.2d at 144.

In the present case, the WCJ's decision reflects that he carefully considered and weighed the testimony of the primary medical experts and set forth a proper rationale for his determinations.[4] Specifically, the WCJ, in rejecting the opinions of Employer's medical experts, found as follows:

> I initially note that both [Drs. Zelouf and Aquino] saw the claimant only one time. They did not examine all of [his] past medical records, thus depriving themselves of a full picture of [his] condition both before and after the work injury. The one time examination and cursory

---

[4] In support of its position that the WCJ may not have adequately considered Employer's medical evidence, Employer expressed a concern that the cover letter included as part of the WCJ's decision lists Dr. Naidu's deposition under "Employee Exhibits" but nothing under "Employer Exhibits." As Employer recognizes, however, the WCJ specifically acknowledged Employer's evidence in the body of his decision. Accordingly, Employer's concern that the WCJ's oversight in the cover letter somehow indicates that he gave insufficient weight to Employer's medical evidence is of no moment.

record review gave these two doctors a very narrow factual base upon which to ground their conclusions.

F.F. No. 10.

Further, in according more weight to the opinion of Dr. Naidu, the WCJ found him to be more qualified than the two IME doctors and noted as follows: "[Dr. Naidu] has been the treating physician for about a year and he has examined the claimant under all types of circumstances and conditions of both remission and exacerbation. This gives him a broad factual base upon which to ground his conclusions and adds to his credibility." *Id*., No. 11. It is well established that a WCJ may ascribe more weight to the opinion of a treating physician. *D.P. "Herk" Zimmerman, Jr., Inc. v. Workmen's Comp. Appeal Bd. (Himes)*, 519 A.2d 1077, 1080 (Pa. Cmwlth. 1987). Where, as here, the WCJ's decision and reasoning reflect that he reviewed the record evidence, and, where his respective credibility determinations as to the physicians is based on Claimant's expert having greater familiarity and experience with Claimant, the test for a reasoned decision is met. *PEC Contracting Eng'rs v. Workers' Comp. Appeal Bd. (Hutchison)*, 717 A.2d 1086, 1089 (Pa. Cmwlth. 1998).

Accordingly, there is no indication that the WCJ acted capriciously, failed to render a reasoned decision or disregarded substantial, competent, uncontroverted and critically relevant evidence. For the above reasons, we affirm.

 

 

**BONNIE BRIGANCE LEADBETTER,**
Judge

 

Judge Cohn Jubelirer did not participate in the decision in this case.

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania State University/ :
The PMA Insurance Group, :
               Petitioner :
             :
          v. : No. 1050 C.D. 2015
             :
Workers' Compensation Appeal :
Board (Bachman), :
            Respondent :

# **O R D E R**

       AND NOW, this 6th day of January, 2016, the order of the Workers'

Compensation Appeal Board is hereby AFFIRMED.

                                          _____
                                          **BONNIE BRIGANCE LEADBETTER,**
                                          Judge