# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marie Zito, : 
                Petitioner : 
                 : 
         v. :   No. 138 C.D. 2017
                 :   Submitted: July 14, 2017
Workers' Compensation Appeal : 
Board (Northeastern Pennsylvania : 
Health Alliance), : 
                Respondent : 

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
               **HONORABLE MICHAEL H. WOJCIK,** Judge
               **HONORABLE JOSEPH M. COSGROVE,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: September 14, 2017**

Marie Zito (Claimant) petitions for review of a January 13, 2017 Order of the Workers' Compensation Appeal Board (Board) affirming a July 6, 2016 Order of the Workers' Compensation Judge (Second WCJ) denying Claimant's petitions to review compensation benefits (Review Petition) and medical treatment and/or billing (Medical Petition). On appeal, Claimant contends that there is not substantial evidence to support the Second WCJ's conclusion that Claimant failed to prove a causal relationship between her workplace accident and her expanded description of her injuries, and that the Second WCJ capriciously disregarded a

prior determination of a different WCJ (First WCJ) on the mechanism of Claimant's injury. Upon review, we affirm.

On October 7, 2010, Claimant, a registered nurse working in the intensive care unit of Hazleton General Hospital, was assisting in the transport of a patient to Lehigh Valley Hospital.[1] While Claimant was performing chest compressions on the patient, the driver of the ambulance slammed on the brakes, throwing Claimant into a wall of cabinets. On November 8, 2010, Greater Hazleton Health Alliance, under a Notice of Compensation Payable (NCP), recognized that Claimant suffered a work-related injury to her right hand.

On April 15, 2014, the First WCJ reinstated Claimant's benefits, which had previously been suspended. (First WCJ Decision, Conclusions of Law (COL) ¶ 3, Apr. 15, 2014.) In doing so, the First WCJ described the mechanism of Claimant's injury, that is, the manner in which the injury occurred, as follows: "While she was administering CPR, the driver of the ambulance slammed on the brakes and she was thrown into a cabinet with her hand **extended**, injuring her right hand and wrist." (*Id.*, Findings of Fact (FOF) ¶ 18 (emphasis added).) The First WCJ expanded the description of Claimant's work-related injury to include a "scapholunate ligament tear, status post scope and debridement, status post recent capsulodesis, de Quervain's tendonitis, index trigger, and cubital tunnel."[2] (*Id.*, COL ¶ 1.)

---

[1] At the time, Claimant was concurrently employed by Greater Hazleton Alliance and Lehigh Valley Hospital, Inc.

[2] Jay S. Talsania, M.D., performed a diagnostic arthroscopy on November 29, 2010, during which he noted a scapholunate ligament tear. Based on that tear, Dr. Talsania cut two small nerves and additionally released Claimant's de Quervain's tendonitis and right index trigger. On December 11, 2012, Lee Osterman, M.D., performed a revision arthroscopy, synovectomy, capsulodesis, ulnar nerve release, and cleaning of the tendons of the index finger.

On June 30, 2015, Claimant submitted the Review and Medical Petitions. Both the Review and Medical Petitions sought "to expand the description of [her work-related] injury to include brachial plexopathy, neuropathic pain, cervical radiculitis, rotator cuff injury, and possible complex regional pain syndrome [(CRPS)] of the right upper extremity." (Review and Medical Petitions, June 30, 2015, at 1.)

A hearing ensued before the Second WCJ on December 29, 2015, during which Claimant testified that her workplace injury occurred when the driver of the ambulance "hit the brakes . . . which threw [her] into the wall of cabinets in the ambulance rig." (R.R. at 27a.) She experienced "[s]evere pain, significant swelling" in her right wrist, hand, and forearm. (*Id.*) She denied that there was any initial pain in her right shoulder or neck. Rather, "[i]t was all in the wrist." (*Id.*) Claimant testified that Shailen Jalali, M.D., an anesthesiologist, first examined her on March 31, 2015, and diagnosed her with brachial plexopathy, neuropathic pain, cervical radiculitis, rotator cuff injury, and possible CRPS. This was the first time she had received such a diagnosis.

In support of Claimant's Review and Medical Petitions, she submitted the deposition testimony of Dr. Jalali. He testified that Claimant told him that she was injured when the driver of the ambulance hit the brakes hard, she fell forward to the front of the ambulance, and then "broke her fall by her **outstretched** arm." (*Id.* at 46a (emphasis added).) Claimant told Dr. Jalali that following the accident, she had more complaints of pain in her right wrist, but she also had "descriptions of pain in [the shoulder and chest wall] **from the beginning**." (*Id.* at 73a (emphasis added).) It was not as if the providers treating Claimant failed to recognize the pain in Claimant's right shoulder, it was just "lower on the priority scale." (*Id.*)

3

Based on, *inter alia*, Claimant's description of the pain, the location of the pain, the type of injury that occurred, and the fact that Claimant had pain in her shoulder from the beginning, Dr. Jalali concluded, to a reasonable degree of medical certainty, that Claimant has a brachial plexopathy, neuropathic pain, cervical radiculitis, a rotator cuff injury, a labral tear, and possible CRPS, and that they were caused by her workplace accident. (*Id.* at 54a, 72a-74a.) On cross examination, Dr. Jalali conceded that it was difficult for him to attribute the labral tear and rotator cuff injury in Claimant's right shoulder to her workplace accident because he is not an orthopedic surgeon. (*Id.* at 94a.) Dr. Jalali acknowledged that he did not review medical records from some of Claimant's medical providers, such as Dr. Gorski, Gregor Hawk, M.D., and Lee Osterman, M.D., and that Claimant had provided him with most of the information he possessed. (*Id.* at 84a.)

In further support of Claimant's Review and Medical Petitions, she submitted the deposition testimony of Dr. Hawk. Dr. Hawk, an orthopedic surgeon, testified that when he examined Claimant on August 31, 2015, she told him that the ambulance in which she was riding came to a sudden stop, "she was thrown and **she put her right upper extremity out** to try and stop herself. She had injuries to her right wrist, right elbow as well as pain in the right shoulder." (*Id.* at 244a (emphasis added).) Dr. Hawk's examination of Claimant involved only her right shoulder. Ultimately, after performing a physical examination and reviewing some of Claimant's medical records, Dr. Hawk concluded, to a reasonable degree of medical certainty, that Claimant has right shoulder impingement syndrome or rotator cuff tendinitis, another name for which is bursitis. Dr. Hawk attributed these conditions to Claimant's workplace accident,

4

specifically citing the onset of her right shoulder complaints and the manner in which the accident happened. Regarding the manner in which the accident happened, Dr. Hawk testified that Claimant "describe[d] being thrown and putting her arm straight out in an elevated position to stop her fall or deceleration as the vehicle stopped and that put her shoulder in a position of injury, which is an elevated position, which is a very good mechanism to cause a compression injury to the rotator cuff." (*Id.* at 253a.) Dr. Hawk specified that he had reviewed the records of Jay S. Talsania, M.D., an April 15, 2015 MRI of Claimant's right shoulder, and the deposition testimony of Bryan X. DeSouza, M.D., a neurologist, who conducted an independent medical examination (IME) of Claimant.

In support of the position of Northeastern Pennsylvania Health Alliance (Employer), it submitted the deposition testimony of Dr. DeSouza. Dr. DeSouza examined Claimant on October 2, 2015. She told him that she was doing chest compressions in the ambulance when it swerved and "she hit her wrist against the wall," resulting in an injury to her hand. (*Id.* at 133a-34a.) Later, on cross-examination, Dr. DeSouza agreed that counsel's description of Claimant's workplace accident – that when the driver slammed on the brakes, Claimant was thrown forward and braced herself with her arm as she was thrown into the far wall – was consistent with Dr. DeSouza's understanding of the mechanism of Claimant's injury. (*Id.* at 188a.) Dr. DeSouza testified that Claimant's hand was "the **only** thing that she said she injured at that time." (*Id.* at 134a (emphasis added).) In fact, in reviewing over 1,000 pages of Claimant's medical records, Dr. DeSouza noticed that she had no numbness or problems moving her right shoulder or arm, even though she was specifically checked for those issues for 2 years following her workplace accident. (*Id.* at 149a.)

5

At the examination, Claimant complained to Dr. DeSouza of pain in her chest wall, armpit, biceps, forearm, and in her last two fingers. She said that heat, especially moist heat, helps the pain. Dr. DeSouza observed that Claimant "guard[ed]" her right arm, which is a sign of anticipatory pain. (*Id.* at 139a.) However, when Claimant was distracted, for example, when she went to remove a list of medications from her pocketbook, she was able to move her arm better and with much less pain. Dr. DeSouza had Claimant move a blood pressure stand around the room and a stool out of the way, which she did without difficulty. On the "medical objective exam," Dr. DeSouza did not observe any signs of nerve damage, "such as atrophy of a muscle, loss of a reflex, loss of sensory in a pattern of nerve root, nerve distribution, or a plexus." (*Id.* at 145a.) Thus, Dr. DeSouza could not find a neurological cause for Claimant's pain symptoms. He concluded that her pain was muscular, highlighting that moist heat helps relieve her pain, which would not be true if her pain was neurological. Dr. DeSouza concluded that Claimant's workplace accident caused a right-hand injury, but not a brachial plexopathy, neuropathic pain, cervical radiculitis, a rotator cuff injury, or possible CRPS.

The Second WCJ denied Claimant's Review and Medical Petitions, concluding that Claimant had not satisfied her burden of proof. (Second WCJ Decision, COL ¶ 2, July 6, 2016.) The Second WCJ found that Claimant's testimony was credible. (*Id.*, FOF ¶ 3.) However, the Second WCJ discredited Claimant's witnesses, Drs. Jalali and Hawk, because their testimony on both the mechanism and the nature of Claimant's injury was inconsistent with her own testimony. (*Id.* ¶¶ 12, 15.) Drs. Jalali and Hawk both testified that Claimant injured herself when she broke her fall with an outstretched arm and that she had

6

pain in her shoulder from the beginning, whereas Claimant testified that she hit her wrist when she was thrown against a wall of cabinets and that she initially had pain only in her right wrist. (*Id.*) The Second WCJ highlighted that no doctor had diagnosed Claimant with the conditions alleged in the instant Review and Medical Petitions or attributed those conditions to her workplace accident until March 31, 2015, which was four and a half years later. In addition, Dr. Jalali was not credible because he did not review many of Claimant's medical records, and most of his information came from her. (*Id.* ¶ 12.) Dr. Jalali additionally testified inconsistently about whether the labral tear and rotator cuff injury in Claimant's right shoulder were related to her workplace accident. (*Id.*) Dr. Jalali testified on direct examination that "Claimant's work injury included a right rotator cuff injury, but on cross-examination, when questioned about the labral tear and the rotator cuff injury, he agreed that he could not determine whether they were related to the work injury because he was not an orthopedic surgeon." (*Id.*) Dr. Hawk was additionally not credible because his review of Claimant's medical records was limited to that of Dr. Talsania and the deposition testimony of Dr. DeSouza. (*Id.* ¶ 15.) In contrast, Dr. DeSouza's opinion was "credible, logical, internally consistent, and persuasive." (*Id.* ¶ 18.) His understanding of the mechanism and nature of Claimant's injury was consistent with her testimony, namely, that "she hit her wrist against the wall of cabinets" and that she suffered an injury to her right hand and wrist but nowhere else. (*Id.*) Therefore, the Second WCJ concluded that Claimant had not carried her burden on her Review and Medical Petitions, and the Second WCJ denied them. (*Id.*, COL ¶ 2.)

Claimant appealed to the Board, which affirmed the Second WCJ's Decision and Order. (Board Op. at 7.) The Board held that the Second WCJ's reasons for

7

discrediting Drs. Jalali and Hawk were reasonable. (*Id.* at 5-6.) While Claimant argued that Drs. Jalali and Hawk described the mechanism of Claimant's injury consistent with her testimony, the Board found that the Second WCJ's credibility determinations had to be taken as a whole. (*Id.* at 6.) Because the Second WCJ provided other objective reasons for discrediting Drs. Jalali and Hawk, the Board would not disturb the Second WCJ's credibility determinations. (*Id.*) Claimant now petitions this Court for review.

On appeal to this Court,[3] Claimant raises the following contentions in arguing that there is not substantial evidence to support the Second WCJ's determinations. She argues that Drs. Jalali and Hawk's description of the mechanism of Claimant's injury was consistent with how the First WCJ described it, that Claimant was "administering CPR, the driver of the ambulance slammed on the brakes and she was thrown into a cabinet with her hand extended, injuring her right hand and wrist." (First WCJ Decision, FOF ¶ 18.) That decision was never appealed, making the description of the mechanism of Claimant's injury the law of the case. Dr. DeSouza also stated that this description was consistent with his understanding of the mechanism of Claimant's injury. She contends the Second WCJ acted arbitrarily and capriciously in rejecting the testimony of Drs. Jalali and Hawk, and accepting Dr. DeSouza's testimony solely based on the Second WCJ's

---

[3] Appellate review in a workers' compensation case is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Further, in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002), our Supreme Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court."

8

misapprehension of the previously adjudicated mechanism of injury. Moreover, Dr. DeSouza's opinion was not unequivocal, nor supported by substantial evidence.

In addressing Claimant's arguments, we apply the following principles. A claimant seeking to expand the description of injury in a NCP bears the burden of proof. *Commercial Credit Claims v. Workmen's Comp. Appeal Bd. (Lancaster)*, 728 A.2d 902, 905-06 (Pa. 1999). A claimant must establish by competent evidence that the injury was caused by and arose out of the work-related accident. *Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997, 1000 (Pa. Cmwlth. 2007). A claimant must do so by unequivocal medical evidence unless the relationship is obvious. *Jeannette Dist. Mem'l Hosp. v. Workers' Comp. Appeal Bd. (Mesich)*, 668 A.2d 249, 251 (Pa. Cmwlth. 1995).

Questions of credibility and evidentiary weight are within the exclusive province of the WCJ. *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The authority of the WCJ "over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *Id.* The WCJ is free to "accept or reject testimony of any witness, including a medical witness, in whole or in part." *Id.* The credibility determinations of the WCJ are binding on us. *Id.*

Moreover, it does not matter if "'the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.'" *Id.* (citation omitted). "We examine the entire record to see if it contains [substantial] evidence . . . to support the WCJ's findings." *Id.* "Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion." *Lindemuth*

*v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 n.12 (Pa. Cmwlth. 2016). If the record does contain substantial evidence to support the WCJ's findings, then the findings must be upheld, even if the record contains conflicting evidence. *A & J Builders, Inc.*, 78 A.3d at 1238-39. In undertaking substantial evidence review, "we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *Id.* at 1239.

A capricious disregard of evidence occurs when the fact-finder deliberately ignores relevant, competent evidence "that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). This requires "a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). If there is substantial evidence to support the WCJ's factual findings, and those findings support the WCJ's conclusions, "it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence." *Id.* (emphasis omitted).

Here, the Second WCJ found Drs. Jalali and Hawk to be not credible for multiple reasons. The Second WCJ found Dr. Jalali to be not credible because Dr. Jalali misunderstood both the mechanism of Claimant's injury and whether she had pain in her shoulder from the beginning. In addition, the Second WCJ discredited Dr. Jalali because he relied predominantly on Claimant for information, and not her medical records, and Dr. Jalali testified inconsistently about whether there was a causal relationship between Claimant's workplace accident and the labral tear and rotator cuff injury in Claimant's right shoulder. The Second WCJ found Dr.

10

Hawk to be not credible because Dr. Hawk misunderstood both the mechanism of Claimant's injury and whether Claimant had pain in her shoulder from the beginning. In addition, the Second WCJ discredited Dr. Hawk because his review of Claimant's medical records was limited.

Substantial evidence supports the Second WCJ's determination to discredit Drs. Jalali and Hawk because they mistakenly thought that Claimant had complained of shoulder pain at the time of her workplace accident. Dr. Jalali testified that "[Claimant] had descriptions of pain in [the shoulder and chest wall] from the beginning[,]" (R.R. at 73a), while Dr. Hawk testified that Claimant had "pain in the right shoulder" at the onset, (*id.* at 244a). Claimant, however, testified that, at first, she did not have pain in the shoulder or neck; rather, "[i]t was all in the wrist." (*Id.* at 27a.) Dr. DeSouza confirmed as much through his review of over 1,000 pages of Claimant's medical records, testifying that "at the onset of the trauma, there was no numbness or problems with moving the right shoulder and arm[,]" and that Claimant's right shoulder and arm were "specifically checked on all exams, from the first exam on the date of the injury through October 9, 2012, two years later." (*Id.* at 149a-50a.) All those evaluations, Dr. DeSouza said, "were negative for numbness or any suggestion of a nerve injury, such as brachial plexus traction, or a cervical radiculopathy, or [CRPS], or [reflex sympathetic dystrophy]." (*Id.* at 150a.) Dr. DeSouza continued, stating "[s]o even with the review of systems, where the doctor is asking the patient to describe all the areas that's bothering [her], it was negative." (*Id.* at 150a.) Thus, substantial evidence supports the Second WCJ's finding that Drs. Jalali and Hawk mistakenly thought that Claimant had complained of shoulder pain at the time of her workplace

11

accident, and it was not error for the Second WCJ to discredit Drs. Jalali and Hawk on this basis.

There is also substantial evidence to support the Second WCJ's finding that Dr. Jalali testified inconsistently about whether there was a causal relationship between Claimant's workplace accident and the labral tear and rotator cuff injury in her right shoulder, and it was not error for the Second WCJ to discredit Dr. Jalali on this basis as well. *See Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003) (stating that a WCJ may validly discredit a medical witness because the witness betrays a bias or is impeached with an inconsistency in his or her testimony). On direct examination, Dr. Jalali testified, to a reasonable degree of medical certainty, that the labral tear and rotator cuff injury in Claimant's right shoulder were caused by her workplace accident. (R.R. at 73a-75a.) On cross-examination, however, Dr. Jalali acknowledged that it was "hard for [him] to say that" these injuries were related to her workplace accident because Dr. Jalali is "not an orthopedic surgeon." (*Id.* at 94a.) Based on this testimony, substantial evidence supports the Second WCJ's decision to discredit Dr. Jalali on this basis.

Another reason the Second WCJ discredited Dr. Jalali was because Dr. Jalali relied mostly on information from Claimant, and not her medical records. Substantial evidence supports the Second WCJ's determination to discredit Dr. Jalali on this basis as well, since he acknowledged as much during his cross-examination testimony. (*Id.* at 84a.) Dr. Jalali testified that he did not receive any records from Dr. Gorski, Dr. Osterman, or Dr. Hawk. (*Id.*)

As for Dr. Hawk, substantial evidence supports the Second WCJ's determination to discredit him on the basis that his review of Claimant's medical

12

records was limited. Dr. Hawk testified that he reviewed only Dr. Talsania's records, an April 15, 2015 MRI of Claimant's right shoulder, and the deposition testimony of Dr. DeSouza, who performed the IME. *See Daniels*, 828 A.2d at 1053 (noting that a WCJ may discredit a medical witness because the witness "had less interaction with the subject").

We agree, however, with Claimant's assertion that substantial evidence does not support the Second WCJ's determination to discredit Drs. Jalali and Hawk because they misunderstood the mechanism of Claimant's workplace injury. Drs. Jalali and Hawk both explained that Claimant was injured when she broke her fall by extending her right arm. The testimony of Drs. Jalali and Hawk was consistent with the First WCJ's finding of fact on this point, which stated that: "While [Claimant] was administering CPR, the driver of the ambulance slammed on the brakes and she was thrown into a cabinet with her hand extended, injuring her right hand and wrist."[4] (First WCJ Decision, FOF ¶ 18.) Claimant's testimony on the instant Review and Medical Petitions as to the mechanism of her injury was not as clear because she testified that the driver of the ambulance "hit the brakes . . . which threw [her] into the wall of cabinets in the ambulance rig . . . [and she] sustained a right wrist injury." (R.R. at 27a.) Although Claimant's testimony here, by itself, left it open to interpretation as to whether she hit her wrist against the wall of cabinets in the ambulance or broke her fall with her right, outstretched arm, the First WCJ's finding regarding how Claimant injured her wrist is the law of the case and should have been followed. *See Marian v. Workers' Comp. Appeal Bd. (Scott Twp.)* (Pa. Cmwlth., No. 1616 C.D. 2009, filed Feb. 24, 2010), slip op. at 15

---

[4] The First WCJ summarized Claimant's testimony but did not quote from it.

13

(stating that Second WCJ rightly recognized that First WCJ's findings on causation were the law of the case).[5]

Moreover, while Dr. DeSouza initially testified that Claimant "hit her wrist against the wall," on cross-examination, he agreed with Claimant's counsel's description that Claimant "was thrown forward and braced herself with her arm as she was thrown into the far wall[.]" (R.R. at 133a-34a, 188a.) Thus, on cross-examination, Dr. DeSouza's testimony on how Claimant injured her wrist was consistent with that of Drs. Jalali and Hawk. Therefore, the Second WCJ should not have discredited Drs. Jalali and Hawk on the basis that they misunderstood the mechanism of Claimant's injury, and doing so was error.

However, as explained above, the Second WCJ discredited Drs. Jalali and Hawk for multiple reasons, and those reasons, with the exception of their understanding of the mechanism of Claimant's injury, are supported by substantial evidence. Most notably, the Second WCJ rejected the testimony of Drs. Jalali and Hawk because they stated that Claimant had shoulder pain at the onset of her workplace accident. The misunderstanding of Drs. Jalali and Hawk regarding when the pain in Claimant's right shoulder developed called into question their conclusion on causation, since pain from the onset shows a much clearer causal relationship. *See Tobias v. Workmen's Comp. Appeal Bd. (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784-85 (Pa. 1991) (providing as an example of an obvious causal connection, "an immediate back injury following heavy lifting"). Indeed, Dr. Jalali's testimony was that he concluded, in part, that there was a causal

    [5] *Marian* is cited in accordance with Section 414(a) of this Court's Internal Operating Procedures, which provides that an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

14

relationship between Claimant's workplace accident and her shoulder pain because "[s]he had descriptions of pain in that region from the beginning." (R.R. at 73a); *see Daniels*, 828 A.2d at 1053 (noting that it is valid for a WCJ to discredit a medical witness because the witness's opinion is based on an erroneous factual assumption). Neither Dr. Jalali nor Dr. Hawk explained that there could be a causal relationship between Claimant's right shoulder injuries and her workplace accident even if the injuries to her shoulder did not manifest themselves until years later. Moreover, it is evident from the Second WCJ's Decision that the timing of Claimant's first complaints of shoulder pain was critical to the Second WCJ's credibility determinations. Twice the Second WCJ mentioned in her decision that no medical provider diagnosed Claimant with the conditions alleged in the instant Review and Medical Petitions or attributed those conditions to the workplace accident until Dr. Jalali did so on March 31, 2015, which was four and a half years after Claimant's accident. (Second WCJ Decision, FOF ¶¶ 6, 9.)

Therefore, although Drs. Jalali and Hawk should not have been discredited on the basis that they misunderstood the mechanism of Claimant's injury, we find this error is harmless. An error is harmless if it "is not necessary to the adjudication." *Monaghan v. Bd. of Sch. Dirs. of Reading Sch. Dist.*, 618 A.2d 1239, 1243 (Pa. Cmwlth. 1992); *see Lashlee v. Workers' Comp. Appeal Bd. (G.M. McCrossin, Inc.)* (Pa. Cmwlth., No. 1725 C.D. 2007, filed Feb. 25, 2008), slip op. at 6-7 (applying *Monaghan* in a workers' compensation case); *see also Drago v. Workers' Comp. Appeal Bd. (Channellock, Inc.)* (Pa. Cmwlth., No. 61 C.D. 2008, filed July 3, 2008), slip op. at 11-12 (analogizing harmless error in a workers' compensation case to harmless error in a criminal case – whether the error

15

contributed to the WCJ's decision – but acknowledging that the standards are "not exactly the same").

When the significance of the Second WCJ's determination to discredit Drs. Jalali and Hawk, because they mistakenly thought Claimant had pain in her right shoulder from the beginning, is considered in combination with the other independent bases the Second WCJ set forth for discrediting Drs. Jalali and Hawk, which are all supported by substantial evidence, these reasons are sufficient to support the Second WCJ's determination. Previously we have held that where a WCJ provides several reasons for rejecting a witness's testimony and one of those reasons is erroneous, the other reasons may render the error harmless. For example, in *Norristown State Hospital/Compservices v. Workers' Compensation Appeal Board (Irwin)* (Pa. Cmwlth., Nos. 2160 C.D. 2008, 2256 C.D. 2008, filed Nov. 2, 2009), slip op. at 6-7, the WCJ mistakenly found that claimant's medical witness, Dr. Elisabeth Cousens, attributed claimant's radiculopathy to a 1982 motor vehicle accident that was unrelated to his work and predated his work-related injury. The Board determined that this error was harmless because the WCJ provided two other independent reasons for rejecting Dr. Cousens' testimony; namely, that there were no objective studies to support claimant's complaints of pain and the employer's medical witness had qualifications that were superior to that of Dr. Cousens. *Id.* at 7. On appeal, we agreed with the Board, stating that these independent bases for rejecting Dr. Cousens' opinion testimony made the WCJ's error harmless. *Id.*

Similarly, in *Soto v. Workers' Compensation Appeal Board (Price Chopper Operating Company of Pennsylvania)* (Pa. Cmwlth., No. 611 C.D. 2015, filed Nov. 24, 2015), slip op. at 6, the WCJ erroneously found that the opinion of one of

16

claimant's medical witnesses, Dr. Yasin Khan, was equivocal. The Board, nevertheless, affirmed the WCJ's determination because the WCJ provided other independent reasons for discrediting Dr. Khan. *Id.* at 7. Dr. Khan's account of the claimant's back injury, that it was the result of repeated heavy lifting, twisting, and turning, was inconsistent with claimant's account that his injury was the result of an acute event. *Id.* at 1-2, 4, 9. In addition, claimant had indicated on intake forms from Dr. Khan that the pain had been going on for many years and that claimant's condition was not work-related. *Id.* at 4-5. We agreed with the Board, holding that "[w]here a WCJ erroneously rejects medical testimony on the basis that it is equivocal but also rejects the testimony as not credible for independent reasons, the error is not reversible." *Id.* at 10; *see Patton v. Workers' Comp. Appeal Bd. (Lane Enter., Inc.)*, 958 A.2d 1126, 1135 (Pa. Cmwlth. 2008) (holding that even though the WCJ did not correctly apply the law of the case doctrine in discrediting the testimony of claimant's medical witness, the WCJ set forth additional reasons for discrediting the witness, such as doctor's lack of qualifications to interpret chest x-rays, and, therefore, any error was harmless); *cf. Drago*, slip op. at 11-12 (holding that other bases for discrediting witness did not render the WCJ's error in taking an adverse inference harmless but implying that had the other bases for discrediting claimant's medical witness been objective and not based on speculation, it might have been harmless).

As in these cases, here, the Second WCJ provided independent reasons for rejecting the testimony of Drs. Jalali and Hawk, and those other reasons were significant, particularly their mistaken belief that Claimant had pain in her right shoulder from the beginning. Therefore, the other reasons the Second WCJ provided for rejecting the testimony of Drs. Jalali and Hawk render the Second

17

WCJ's error in rejecting their testimony on the basis that they misunderstood the mechanism of Claimant's injury harmless.

In short, while the Second WCJ erred in discrediting Drs. Jalali and Hawk on the basis that they misunderstood the mechanism of Claimant's injury, there were other valid bases for discrediting them. Thus, there is substantial evidence to support the Second WCJ's credibility determinations, and, because the Second WCJ's error did not affect her credibility determinations, the error is harmless. Moreover, here, Claimant had the burden of proof because she was attempting to expand her accepted injury in the Review and Medical Petitions. *Commercial Credit Claims*, 728 A.2d at 905-06. Because the Second WCJ found Claimant's medical witnesses to be not credible, Claimant failed to carry her burden of proof. *See Stalworth v. Workers' Comp. Appeal Bd. (Cnty. of Delaware)*, 815 A.2d 23, 29-30 (Pa. Cmwlth. 2002) (noting that it was irrelevant whether employer's medical expert was incompetent since WCJ found claimant's medical expert not credible and, thus, claimant did not meet her burden of proof).

Further, the Second WCJ did not capriciously disregard evidence. Claimant mischaracterizes the Second WCJ's determination, arguing that the testimonies of Drs. Jalali and Hawk were rejected and the testimony of Dr. DeSouza was accepted "solely" based upon the Second WCJ's misapprehension of the previously adjudicated mechanism of injury. As already discussed, the Second WCJ offered several independent and valid reasons why she discredited Drs. Jalali and Hawk and credited Dr. DeSouza. Since substantial evidence supports the Second WCJ's credibility determinations, we will not disturb the Second WCJ's adjudication based on capricious disregard. *See Williams,* 862 A.2d at 144 (emphasis omitted) ("[I]t should remain a rare instance in which an appellate court would disturb an

18

adjudication based upon the capricious disregard of material, competent evidence."). Therefore, for the foregoing reasons, we affirm the Board's Order.[6]

_____

**RENÉE COHN JUBELIRER,** Judge

---

[6] As an alternative basis for affirming the Board's Order, Employer argues that res judicata precludes review of Claimant's new Review and Medical Petitions, alleging a shoulder and neck injury because, as Drs. Jalali and Hawk testified, Claimant had pain in her right shoulder from the onset of her accident but did not seek recovery for it in her initial petition. As a matter of fact, the Second WCJ found that Claimant did not have pain in her shoulder from the onset of her accident and, therefore, res judicata did not bar her from seeking to recover for such an injury when it arose later. *Cf. Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 955-56 (Pa. Cmwlth. 2008) (holding that claimant's second petition was barred because he experienced pain in his neck following his work incident and reported that pain to his treating doctors but did not seek to recover for that injury in his first petition).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marie Zito,                                    :
                         Petitioner            :
                                               :
             v.                                :   No. 138 C.D. 2017
                                               :
Workers' Compensation Appeal                   :
Board (Northeastern Pennsylvania               :
Health Alliance),                              :
                         Respondent            :

# **O R D E R**

     **NOW**, September 14, 2017, the January 13, 2017 Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

                                            _____

                                            **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marie Zito,                                      :
                    Petitioner                   :
                                                 :
            v.                                   :
                                                 :
Workers' Compensation Appeal                     :
Board (Northeastern Pennsylvania                 :
Health Alliance),                                :    No. 138 C.D. 2017
                    Respondent                   :    Submitted:  July 14, 2017


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

CONCURRING AND DISSENTING
OPINION BY JUDGE COSGROVE          FILED:  September 14, 2017


          While I agree with the Majority that the law of the case doctrine
should have prevented the discrediting of the testimony of Drs. Jalali and Hawk, I
cannot find this discrediting to be harmless error.


                                _____
                                JOSEPH M. COSGROVE, Judge